Christian, J.,
delivered the opinion of the court.
This is a writ of error to a judgment of the Circuit court of the, city of Richmond. The record discloses the following state of facts :
Woody Ruffiu, a convict in the penitentiary, was hired out, with other convicts, in accordance with the provisions of an act of Assembly approved April 23d, 1870, (Sess. Acts 1869-'70, p. 72,) to work on the *792 Chesapeake and Ohio Railroad. While thus engaged in the copjdty of Bath, he killed, in an attempt to make hi& fcscaPe> one Louis F. Swats, who was acting as a guard of the convicts thus employed. For this offence he was tried in the Circuit court of the city of Richmond, by a jury selected from a venire from said city, and was found guilty of murder in the fii’st degree, and was sentenced by said court to be hung on the 25th day of May 1871. To this judgment a writ of error was allowed by this court.
The only question presented for the consideration of this court now (other errors assigned in the petition not being insisted upon here,) is, whether the court below was in error in putting the prisoner upon his trial before a jury selected from a venire summoned from the city of Richmond. It was earnestly insisted, in the able and eloquent arguments of the counsel for the prisoner, that the said Circuit court ought either to have sent the prisoner to the county of Bath, where the offence was committed, to be tried before the County court, of that county, or should have sent to that county for a jury, before whom the prisoner should have been tried. This question raised in different forms, first by a demurrer to the indictment; secondly, by instructions asked for by the prisoner’s counsel, and thirdly, by a motion in arrest of judgment, is the only one necessary to be considered.
The learned counsel for the prisoner, in support of their positions invoke the authority of the bill of rights which is now incorporated in, and made a part of the Constitution of the State; and which declares, among other declarations of personal and political rights, “that in all capital or criminal prosecutions, a man hath a right to a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty.” And it is insisted that those enactments of the statute law which confer upon the Circuit court of the city of Richmond jurisdiction to try offences committed *793 by convicts in tbe penitentiary (except those committed 'within the territorial limits of that jurisdiction), are in contravention of the bill of rights and the constitution, and are therefore void.
The 3rd section of ch. 158, (Code 1860, page 666,) which prescribes the jurisdiction of the Circuit court of the city of Richmond, declares that said court shall have jurisdiction of all criminal proceedings against convicts in the penitentiary.
The 1st section of chapter 215, “ concerning proceedings in criminal cases against convicts,” declares that all proceedings against convicts in the penitentiary shall be-in the Circuit court for the city of Richmond; and provides the mode of summoning a grand jury and a venire, for the indictment and trial of such offenders.
The 3rd section of ch. 215, (Code, page 859,) declares, that a convict guilty of killing an officer or guard of the-penitentiary, shall be punished with death.
An act of the General Assembly, approved April 23d,. 1870, provides “that it shall be lawful for the governor of the Commonwealth to hire out, as in his judgment may be proper, such able-bodied convicts in the penitentiary, whose terms of service at the time of hiring do-not exceed ten years, as can be spared from the work- • shops therein, to responsible persons, to work in stone quarries, or upon any railroad or canal in this State, or for any other suitable labor ;” and makes it the duty of' the governor in executing this act, to provide for the safe keeping and return to the penitentiary of convicts hired or employed under its provisions. The prisoner was one of a number of convicts hired under the provisions of this act, on the Chesapeake and Ohio railroad. Though at the time of the commission of the murder of' which he was convicted, he was not within the walls of the penitentiary, but in a distant part of the State, he-was yet, in the eye of the law, still a convict in the penitentiary ; not, indeed, actually and bodily within its walls,. *794 imprisoned and physically restrained by its bars and bolts ; but as certainly under the restraints of the laws, and as actually bound by the regulations of that institution, as if he had been locked within one of its cells. These laws and regulations attach to the person of the convict wherever he may be carried by authority of law, (or even when he makes his escape), as certainly and tenaciously as the ball and chain which he drags after him. And if when hired upon the public works, though hundreds of miles from the penitentiary, he kills a guard stationed over him by authority of law, he is as guilty of killing a guard of the penitentiary within the meaning of the statute, as if he had killed an officer or regular guard of that institution within its very walls.
The prisoner has thus been found guilty of an offence which the statute law punishes with death. It is not pretended that the verdict of the jury was contrary to the evidence, or that the evidence raises the slightest doubt of his guilt. But his case here rests solely upon the ground that he has not been tried by a jury of his vicinage; which right is secured to him by the bill of rights. The bill of rights though incorporated into and made a part of the present constitution, has the same force and authority which it has always had, neither more nor less, as containing the recognized and fundamental principles of a well regulated government. It is an authoritative affirmation of certain general principles, •and a declaration of the political rights and privileges which it is the duty of the government to secure to the people.
And while these declarations of general principles must be recognized and followed, both in legislation and in the administration and execution of laws, we must 'give to each one of them a reasonable rather than a literal construction; certainlv such a construction as will make each consistent with the others, and carry out most effectually the object and design of the whole *795 instrument. To give a literal interpretation to the clause relied upon by the counsel for the prisoner, to wit: “ That in all capital or criminal prosecutions a man hath a right to demand a speedy trial by an impartial jury of his vicinage, without whose unanimous consent he cannot be found guilty,” would be to say that every criminal must be turned loose whenever an impartial jury of his vicinage could not be found to try him. Such an interpretation would be to declare that every statute in our criminal code which provides for a change of venue, for the removal of causes from one county or one circuit to another, or which authorizes a court to send, under certain circumstances, to any county in the State for a jury, is unconstitutional and void. It has been the common practice for many years, in all the courts of the Commonwealth, to try persons charged with felony before juries not of the vicinage, under the authority of the statutes referred to, and so far as we know the question has never been mooted in any court that these statutes were in violation of the hill of rights. The manifest necessity of the case, and the proper administration of justice, required such enactments.
Ve have said that a reasonable and not a literal construction must be given to the clause under consideration, and a construction that is consistent with the other declarations of general principles in the same instrument. One of these declarations is, “that government is instituted for the common benefit, protection and security of the people,” &c. blow one of the most effectual means of promoting the common benefit and ensuring the protection and security of the people, is the certain punishment and prevention of crime. It is essential to the safety of society, that those who violate its criminal laws should suffer punishment. A convicted felon, whom the law in its humanity punishes by confinement in the penitentiary instead of with death, is subject while undergoing that punishment, to all the laws which the Legis *796 lature in its wisdom may enact for the government of that institution and the control of its inmates. For the time being, during his term of service in the penitentiary, he is in a state of penal servitude to the State. He has, as 'a consequence of his crime, not only forfeited his liberty, but all his personal rights except those which the law in its humanity accords to him. He is for the time being the slave of the State. He is eiviliter mortuus; and his estate, if he has any, is administered like that of a dead man.
The - hill of rights is a declaration of general principles to govern a society of freemen, and not of convictéd felons and men civilly dead. Such men have some rights it is true, such as the law in its benignity acecords to. them, but not the rights of freemen. They are the slaves of the State undergoing punishment for heinous-crimes committed against the laws of the land. While-in this state of penal servitude, they must be subject to-the regulations of the institution of which they are-inmates, and the laws of the State to whom their service-is due in expiation of their crimes.
When a convict in the penitentiary, while undergoing punishment for the crime of which he stands convicted, commits other offences, it is unquestionably in the power of the State, to which his penal servitude is due, to prescribe, through its Legislature, the mode of punishment as well as the manner of his trial. If he commits anoffence not amounting to a felony, the superintendent is-vested bylaw with authority, to punish him by stripes, or the iron mask, or the gag, or the dungeon. If he commits an offence which in law amounts to a felony, he has the privilege of a trial by jury, before a court of justice, to which special jurisdiction is given for that purpose. As a matter of convenience, as well as of manifest necessity, that special jurisdiction must be conferred upon a court within whose territorial jurisdiction the penitentiary is situated. To remove him to a distant county for trial *797 for a second offence, while he is undergoing punishment in the penitentiary for the one of which he already stands •convicted, would defeat the very object of the law which has placed him under the power and control of that institution, and from which he can never be released, except by serving out his term, or by pardon, or by a writ of habeas corpus ; while to try him before the Circuit court of the city of Richmond, where the penitentiary is located, he would still be in the custody of that institution, and would still be undergoing his punishment for his first offence, while held for trial for his second. Suppose the prisoner in this case should be sent to the county of Bath for trial, because'he happened to kill his guard while in that county ; in whose custody would he be ? In that of the superintendent of the penitentiary, or of the jailor of Bath county ? "Who would be responsible for his escape ? By what authority could the jailor of Bath county receive into his jail a convict in the penitentiary ? Or by what authority could the superintendent of the penitentiary station his guard around the jail of that county ? Suppose he should be detained, thus held for trial, for months, or it may be for years ; is this time to be counted as a part of his term in the penitentiary or not? Or must he be carried back to serve out the same time which he has spent in the cells of the county jail ? Again, the witnesses against a convict in a criminal prosecution are themselves convicts. Must they be turned loose from the penitentiary to attend as witnesses at the court of a distant county ? It is thus made manifest that the statute conferring this special jurisdiction upon the Circuit court of the city of Richmond, is founded not -only in convenience, but in the very necessity of the case. But it is insisted by the counsel for the prisoner, that if it was not error in the court below to refuse to send the prisoner to the county of Bath for trial, it ought to have sent its officer to that, county for a venire, because the prisoner was under the *798 bill of rights _... j; entitled to “a trial by a jury of Ms vicin-
We have already intimated that the bill of rights is a declaration of general principles for the government of. a society of freemen, and not of convicted felons. But where is the vicinage of a convict in the penitentiary ? What county can be said to be Ms vicinage ? Not in his case the county in which the offence is committed ; because in the eye of the law he is always in the penitentiary. He may for a lawful purpose be carried under guard beyond its walls. But wherever he may be, until he has served out to the last moment, the term fixed by the sentence of the law, or has been pardoned, he is still a convict in the penitentiary. If he kills the guard which the law has stationed over him, whether the murder be committed wfithin its walls, or on the capitol square, or in the county of Bath, he has still committed an offence while a convict in the penitentiary. If he can be said to have a vicinage at all, that vicinage as to him is within the walls of the penitentiary, which (if not literally and actually) yet in the eye of the law surround him wherever he may go, until he is lawfully discharged. If he has forfeited this right, which every freeman may claim, “ a trial by a jury of his vicinage,55, that forfeiture is a consequence of his crime, and is one of the penalties which the law denounces against a convicted felon, as much one of the penalties attached to his crime, as the whipping post, the iron mask, the gag, or the dungeon, which is provided for offences other than felonies. He is for the time being a slave, in a condition of penal servitude to the State,'and is subject to such laws and regulations as the State may choose to prescribe.
We are therefore of opinion, that there was no error in the refusal of the Circuit court of Richmond either to remand the prisoner to the county of Bath for trial, or to send to said county for a jury to try him. And we *799 are the more ready to uphold the statutes under which the prisoner was tried, as not in any respect in' contravention of the bill of rights and the constitution, because the prisoner could not have been prejudiced by the fact that he was tried in the mode prescribed by law. We are at a loss to perceive what possible injustice or hardship can result to the prisoner, from the fact that he was tried by a jury of the city of Richmond instead of the county of Bath. So far as the record shows, the prisoner never was in the county of Bath before in his life. He cannot claim that county as Ms vicinage, because he happened to be with his guard, whom he murdered, in the county of Bath, but at the same time a convict in the penitentiary, under the control and subject to the laws which govern that institution and its inmates.
We are of opinion that the judgment of the Circuit, court of the city of Richmond must be affirmed.
Judgment appirmed.